Michael McMahon v. City of Dubuque, Appellant.

**Municipal Corporations:** negligence. A city, in making contracts for macadamizing its streets, stipulated that a certain price per square yard should be deducted from the estimate for the use of the steam road roller. The city's agent used the roller without suggestion from the contractor, and the city retained the stipulated price. *Held,* that it could not escape liability for a fire set

by the roller on the ground that the use of the roller was for the public benefit.

**Damages:** MEASURE.  The actual value of household goods and wearing apparel used by a family, based on their cost, condition, and age, and not their market value, is the measure of damages for their burning through negligence.

SAME.  The actual value, before the fire, of a house burnt through negligence, and not the market value, is the measure of the damages for the burning.

**Evidence:** COMPETENCY.  A witness cannot give an opinion as to the condition of repair of a house destroyed by fire, through negligence; the criterion being its description in detail, from which the jury may determine its condition.

SAME.  Expert witnesses in testifying on the question of the alleged negligence of a municipal corporation for failure to use a device to prevent the escape of sparks from the steam roller are properly allowed to use the model of a locomotive to illustrate the use of a spark arrester and to indicate how it could be applied to the roller engine where the court cautioned them that "in so far as the different parts of this model are similar to those shown in this model of the steam roller, you may call attention to them, but the other parts you are not to mention."

*Appeal from Dubuque District Court.*—Hon. Fred O'Don-nell, Judge.

Saturday, December 17, 1898.

Action for damages occasioned by a fire set out from sparks escaping from the smokestack of a steam road roller, owned and being operated by the city of Dubuque in rolling newly-laid macadam on one of its streets on which the lots of plaintiff abutted.  The house thereon, with its contents, was destroyed.  The jury returned a verdict for the plaintiff, on which judgment was rendered, and the defendant appeals.—*Affirmed.*

*Duffy & Maguire* for appellant.

*Longueville, McCarthy & Kenline* for appellee.

Ladd, J.—The household goods and wearing apparel of the plaintiff and his family were destroyed. These had been used, were worn, and somewhat out of style. Such property has no recognized market value, and recovery must be based on its actual value. *Gere v. Insurance Co.,* 67 Iowa, 272; *Clements v. Railway Co.,* 74 Iowa, 442. To ascertain the actual value, it was proper to take into consideration the original cost of the articles, the extent of their use, whether worn or out of date, their condition at the time, and from all these determine what they were fairly worth. The cost alone would not be the correct criterion for the present value, but it would be difficult to estimate the value of such goods except by reference to the former price, in connection with wear, depreciation, change in style, and present condition. *Luse v. Jones,* 39 N. J. Law, 707; *Railway Co. v. Nicholson,* 61 Tex. 550; *Lumber Co. v. Wilmore,* 15 Colo. Sup. 136 (25 Pac. Rep. 556); *Printz v. People,* 42 Mich. 144 (3 N. W. Rep. 306); *State v. Hathaway,* 100 Iowa, 225; *Latham v. Shipley,* 86 Iowa, 548. The cross-examination of Lizzie McMahon indicated that she spoke only of the actual value, and not of the market price.

II. A witness was not permitted to testify whether the house destroyed was in good repair, because merely an opinion. The value of the house was in controversy. The condition of a dwelling house as a whole is not observable, except upon examination, and for this reason does not come within the rule of *Kelleher v. City of Keokuk,* 60, Iowa, 474, that testimony of matters within the observation of all are to be treated of as facts rather than opinion. There might well be wide differences of opinion as to what would constitute good repair, and the court rightly held that the house might be described in detail, and from such evidence the jury determine its condition.

III. Evidence was received, over the defendant's objection, showing the actual value of the house at the time

of the fire, and, it is said, this does not furnish the true basis of recovery.    The fundamental principle in all actions for damages is that just compensation be made to him who has suffered injury from another in his person or property, and, in order to give satisfaction, measured in money, such rules are formulated as are thought best adopted to accomplish this purpose.    A distinction has, for this reason, been made between growing crops, shrubs, and trees, whose chief value is because of their connection with the soil and their incidental enhancement of the value of the land, and those improvements which may be replaced at will, and whose value may readily be determined, apart from the ground on which· they rest.    It is thus put by Mr. Sutherland in his work on Damages (vol. 3, p. 368):    "If the thing destroyed, although it is a part of the realty, has a value which can be accurately measured and ascertained without reference to the soil on which it stands, or out of which it grows, the recovery may be the value of the thing thus destroyed, and not for the difference in value of the land before and after such destruction."    In *Drake v. Railway Co.*, 63 Iowa, 310, crops were destroyed by overflow caused by an embankment, and the measure was held to be the difference between the market value of the land immediately before and after the injury.    This rule was approved in *Sullens v. Railway Co.*, 74 Iowa, 660, and applied, where growing trees were burned, in *Greenfield v. Railway Co.*, 83 Iowa, 276, and *Brooks v. Railway Co.*, 73 Iowa, 182.    See *Smith v. Railroad Co.*, 38 Iowa, 518; *Striegel v. Moore*, 55 Iowa, 88.    In *Rowe v. Railway Co.*, 102 Iowa, 288, the court said:    "Appellant's contention results in fixing the value of each tree destroyed or damaged by the fire, and the aggregate of such values would be the measure of plaintiff's recovery.    Such a rule may well be held applicable to the destruction by fire of buildings, fences, and other improvements, which may at once be replaced, where the exact cost of restoring the property destroyed is capable of definite ascertainment, and where there is no damage of the

realty itself." It is apparent that growing crops, small trees, and orchards are of little or no use separated from the soil, and that their value must necessarily be determined in connection with the land on which they stand. This is not true of improvements which may be replaced at will. In *Graessle v. Carpenter,* 70 Iowa, 167, the defendant, by digging trenches and laying water pipes, injured the plaintiff's fences, walks, house, and shrubs. It was not shown the acts were of such a nature as to permanently injure the real estate, or that it could not be restored to its condition before the fire. The court, through Beck, J., announced the rule to be that which will "give the plaintiff just and full compensation. * * * In the case before us the familiar and simple rule applicable to such cases would perfectly attain that end. That rule is this: The plaintiff may recover as damage the sum which, expended for the purpose, would put the property in as good condition as it was in before the injury, with the additional sums which would compensate the plaintiff for the use and enjoyment of the property, should he be deprived thereof by the injury, and the value of such property, as trees, buildings, and the like, which have been wholly destroyed, and cannot be restored to the condition they were in before the injury." We take it, the trees and shrubs were of a character which might be replaced by others of the same actual value; otherwise the case is not in harmony with those cited. In *Freeland v. City of Muscatine,* 9 Iowa, 465, the defendant, in changing the grade, dug away the dirt, and caused the plaintiff's house to fall, and it was held: "The cost of rebuilding or repairing was properly taken into consideration, if we understand it as having reference to the quality and condition of the building before the accident, and the instruction cannot be taken in any other sense. It is the cost of rebuilding and repairing, which implies the restoring it to as good condition as before, and not the putting a new and firm building in the place of an old and decayed one." To prove the market value of the land immediately before and after

the fire would be accomplishing, by circumlocution, what might be directly ascertained, for such difference would be the value of the house.  True, location may sometimes have a bearing, as where a building is so situated as not to be useful for the purpose of its construction.  In such cases this must be taken into consideration in fixing the real value.  But it could be as readily done in estimating this separate from as with the land.  Simplicity and directness are particularly favored in modern jurisprudence.  True, such property may have no market value.  It does, however, have actual value, and this is, then, the measure of recovery.  The ruling was right.

IV.  The alleged negligence of the defendant was the failure to use any device such as a spark arrester, to prevent the escape of cinders, coals, and sparks from the engine.  No other issue as to negligence was submitted, and the state of repair of the engine was not material.  Experts, in testifying, were allowed to use a model of a locomotive engine to illustrate the use of a spark arrester, and to indicate how it could be applied to the roller engine, and for no other purpose.  The court was careful to caution the witnesses that, "in so far as the different parts of this model are shown to be similar in this model to the steam roller, you may call attention to them, but the other parts of the model you are not to mention."  We discover no error in this.  The model was used to better bring to the understanding of the jury a mechanical device.  It was like the use of a plat or sketch by a witness to indicate relative locations or directions.

V.  The appellant asserts that in operating the steam roller it acted solely for the public, and not for any private corporate benefit. · It may be observed that the defendant is incorporated under a special charter, and that, by chapter 210, Acts Sixth General Assembly, it was given the power and made its duty to grade, pave, and otherwise improve its streets, and for this purpose it may levy a special tax on any lot or lots, or the owner thereof, for

the purpose of grading, paving, or macadamizing the same, and is authorized to collect it under regulations prescribed by ordinances. That such powers and duties are peculiarly municipal, and injuries occasioned by the negligence of the corporation in carrying out or performing them may be redressed in actions against the city, is not an open question in this state. *Wallace v. Muscatine City,* 4 G. Greene, 373; *Creal v. City of Keokuk,* 4 G. Greene, 47; *Cotes v. City of Davenport,* 9 Iowa, 227; *Ross v. City of Clinton,* 46 Iowa, 606. See collection of authorities generally in note to *Goddard v. Inhabitants of Harpswell,* 84 Me., 499 (30 Am. St. Rep. 499, 24 Atl. Rep. 958). Though the city might have, under its charter, contracted with others to properly roll its streets, when macadamized, at the cost of the abutting lot owners, it chose to do this work itself and retain compensation therefor. Contractors were required, in making bids, to include, for Telford macadam, "five cents per square yard, the price charged by the city of Dubuque, for the use of the roller and for rolling the street." The contract with Tibey did this, and that amount was detained from the price for such work. It was when rolling the street he had improved that the fire was set out. Had Tibey been employed to do this, as he might have been, and through his negligence, like that of the city, fire had escaped and burned the property of citizens, would any one question the right of recovery? Upon what theory, then, will the municipality escape liability? There are two very satisfactory reasons why it must be held to answer in damages for its negligence: (1) It was engaged in doing, with its own instrumentality, that which it was authorized to contract with another to do at the expense of the abutting lot owners; and (2) the work was voluntarily assumed and carried on for compensation. Mr. Dillon thus states the rule: "The liability of the corporation for its own negligence, or that of its servants, is especially clear, and in fact indisputable, where it has received a consideration for the duties performed, or where, under permissive authority from the legis-

lature, it voluntarily assumes and carries on a work or undertaking from which it receives tolls or derives a profit." 2 Dillon Municipal Corporations, section 881. The city was authorized to make the improvement, but was not bound to undertake it with its own instrumentalities. Having done so, it incurred the same liability an individual would have done in performing like work. We have found no authorities precisely in point, but the principle is so just that none are required. It finds analogy in the cases holding municipalities, owning and operating water and gas works, docks, piers, and other property, to the same liability as individuals or private corporations with similar ownership and performing like duties. In operating the steam roller, the city was acting peculiarly for the benefit of the municipality, and in a way to enable it to exact compensation from property owners within its limits. Its liability, similar to that of an individual if engaged in doing the same work, is within the principle approved by the authorities generally.—AFFIRMED.