## J. J. Hoppes v. Des Moines City Railway Company, Appellant.

**Drainage:** OBSTRUCTION TO FLOW OF SURFACE WATER: PLEADINGS: SUFFICIENCY: APPEAL. A petition in an action for damages caused by obstructing the flow of surface water, which fails to allege interference by defendant or any one else with the flow of the water in any manner, is insufficient; but where no objection to the pleading is interposed on the trial and the same proceeds with acquiescence of the parties as though the pleading was sufficient in this respect, it will be so treated on appeal.

**Same:** STREET GRADES: DUTY OF ADJOINING OWNER. Where a city has not established a grade line for its streets an abutting property owner is not required to bring his lots to the existing grade to protect the same from overflow by surface water.

**Same:** STREET DRAINS: EVIDENCE. In this action for injury to abutting lots by overflow of surface water the questions of whether the damage resulted from unusual rainfall, and whether the tiles provided could reasonably be expected to carry the water across the street, were for the jury.

**Pleadings:** ASSIGNMENT OF CAUSE OF ACTION: ADMISSION: EVIDENCE. A general denial in answer to a petition setting out a copy of a

written assignment of the cause of action is an admission of the genuineness of the signature to the assignment but nothing more. And to authorize recovery by the assignee a delivery of the assignment must be shown, and this is ordinarily done by introducing the instrument in evidence.

**Assignment of cause of action:** EVIDENCE. In this action to recover by an assignee of a claim for damages evidence of the assignment of the claim is reviewed and held to present a question for the jury.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

FRIDAY, JUNE 10, 1910.

ACTION for damages resulted in a judgment against defendant, from which it appeals. *Reversed.*

*C. C. Cole* and *John Newburn,* for appellee.

*Guernsey, Parker & Miller,* for appellant.

LADD, J.—The case is peculiar, in that no cause of action was stated in the petition. In the first count plaintiff claimed damages "by reason of overflow of surface water overflowing his lots . . . by reason of the stopping of the natural course of the water flow at East Thirtieth and North streets, city of Des Moines." In the second count the claim is for damages to the lots of B. F. Plummer, alleged to have been assigned to plaintiff, and "by reason of damages sustained" by Plummer "by reason of the overflow of surface water on his property, . . . causing the interference and hindrance of the natural water course. Said dam and stoppage of the natural flow of water is in East Thirtieth and North streets." The third count is based on a claim of Ed Hanson alleged to have been assigned to plaintiff, and in the language of the second

count. The petition alleged generally that the floods were
in May and August, 1908. In response to motions for
more specific statement, plaintiff filed an amendment al-
leging the time to have been August 14, 1908, "that the
natural course of water flow" was from the northwest to
the southwest, and that the assignment of Plummer was
oral at first and afterwards reduced to writing and that
of Hanson oral. In a second amendment the damages
claimed in each count were itemized. In the third amend-
ment, "in addition to damages for the times already set
out," damages suffered by Plummer and Hanson in 1907
are claimed, but on what ground save inferentially was not
alleged. The answer was a general denial.

It will be observed that neither the petition nor amend-
ments charge defendant or any one else with having inter-
fered with the flow of water either rightfully or wrong-
fully. But no objection on this ground was
interposed by demurrer, motion to direct ver-
dict, or in arrest of judgment, and, as de-
fendant was content not to take exception to
the sufficiency of the petition as amended in
the trial court, it may be that he ought not to be heard
to do so here by pointing out discrepencies in this respect
between the allegations of the petition and the issues as sub-
mitted to the jury. The trial seems to have proceeded as
though the allegations were that defendant had obstructed
the flow of water in a water course by replacing a bridge
by tile inadequate to carry off the water at the intersec-
tion of North and Thirtieth streets in Des Moines, and
so doing negligently, and, no objection having been
urged that these matters had not been pleaded, ac-
quiescence in their adjudication may have been rightly as-
sumed. *Hoyt v. Hoyt,* 68 Iowa, 703; *White v. Byam.* 96
Iowa, 166; *McFarland v. Muscatine,* 98 Iowa, 199; *Hobbs
v. Marion,* 123 Iowa, 726; *Buce v. Eldon,* 122 Iowa, 92;
*Osborne v. Metcalf,* 112 Iowa, 540. The practice, however,

1. DRAINAGE:
obstruction
to flow of
surface water:
pleadings:
sufficiency:
appeal.

is not to be approved and is adverted to now that the defects in pleading may be obviated before another trial.

II.   In 1901 the defendant extended its track on Thirtieth street in Des Moines north to North street, and then in an easterly direction on it.   Another track was put in two or three years later.   At the intersection of North and Thirtieth streets there had been a bridge with opening beneath about ten feet wide by six feet deep.   A ditch eight feet wide and four feet deep extended from the north or northwest beneath this bridge, and through it the surface water ordinarily flowed off.   As we understand the record, this bridge was removed by defendant and two twenty-four inch tiles laid in the ditch through the street, and it filled. Several witnesses say that, in addition to this, there was a small box passageway for the water.   As to whether defendant also raised the physical grade is in dispute; some witnesses testifying that it did raise the grade of North street about two feet, and that the city raised that on Thirtieth street about the same, while others say that in laying the tracks no change in grade was effected.   The evidence is also in conflict as to whether there was a waterway or course at that place.   Suffice it to say that the evidence was such that the jury might have found there to have been a waterway such as that defendant might not have lawfully obstructed, and that it in laying its track raised the street grade.

The evidence also was in conflict as to whether the tile afforded an adequate outlet for water such as might reasonably be anticipated to accumulate for passage at that place.   The assumption on the part of the appellant that the city raised the grade of North street, if it was changed in laying the tracks, and that tiles were laid under the supervision of the city, is not borne out by the record.

No grade line for either street had been established by ordinance or resolution of the city council, and therefore neither plaintiff nor his assignors were under any obliga-

tion to bring their lots up to the level of the physical grade.

2. SAME: street grades: duty of adjoining owner.

Even if water did stand over the grade for a time, the evidence was such that the jury might have found that it was unduly held back by reason of the inadequacy of the tiles to carry it off with reasonable celerity.

Whether the injury was due to an unprecedented rainfall and the tiles were sufficient to carry off the water which might reasonably be expected to accumulate were appropriate issues for the jury. Appellant suggests

3. SAME: street drains: evidence.

that, inasmuch as defendant occupied a public street, it was under no obligation to provide a passageway. This does not meet the case. Whether required to or not, it did remove the bridge and inserted the tile instead, and, if thereby it negligently obstructed the proper flow of water in a water course, it is liable for consequential damages, regardless of any supposed liability on the part of the city.

III. As said, the petition alleged injury to the premises of one Plummer, and that he had assigned his claim for damages to plaintiff. No evidence whatever of any as-

4. PLEADINGS: assignment of cause of action: admission: evidence.

signment was adduced at the trial, and yet, according to an answer to a special interrogatory, $200 of the verdict was for damages to Plummer's property. True, what purported to be a copy of a written assignment from Plummer to plaintiff was made part of and attached to the petition, and, the answer being a general denial, the genuineness of the signature thereto was thereby admitted. Section 3640, Code. But nothing more than the genuineness of the signature is to be inferred from omission to put such signature in issue by the answer. Delivery must be shown whether the signature be admitted or proven by evidence adduced at the trial, and ordinarily this is done by introducing the instrument in evidence. In the absence of any

proof of the assignment of the claim, it was error to allow recovery thereon.

IV.  Nor was the evidence of an assignment of Hanson's claim to plaintiff conclusively established as held by the court.  Hanson testified as follows:  "Q. I believe you have a claim in here that you have assigned, have you?  A. I think so; yes, sir.  Q. You assigned it to Mr. Hoppes?  A. Yes, sir."

5. ASSIGNMENT OF CAUSE OF ACTION: evidence.

But farther on he said:  "I do not know as I assigned my claim over to him.  I never signed any writing at all giving him any right to sue for damages.  Q. Did you know that your claim was in this case at all?  A. Well, my claim is here, I guess, but I did not assign it to Mr. Hoppes that I know of. . . . I don't know what was said about Mr. Hoppes bringing suit in my behalf.  Don't remember saying anything to that effect. . . . I never sold him or transferred to him any right to bring suit as to this claim.  I did not sell my claim to anybody.  We were talking about it.  I still own the claim."  Redirect:  "And you never transferred it to him for the purpose of bringing this action?  A. He and I were talking about it, and he told me to come in and see you.  Q. Did you transfer it to him?  State what you said.  A. No; I do not know that I ever did."  Here counsel suggested the dismissal of the claim, and witness testified that he had talked with counsel about damages to his potatoes, and that he should have something.  The witness then inquired what was meant by assigning, and was told that it meant "transferring for the purpose of bringing this action.  By the Court: You have a right under the law to assign this claim, if you have one, and the person to whom you assign, or give the authority, may bring the action.  Now, did you in talking to Mr. Newman or to Mr. Hoppes give either one of them the right to bring this action for you?  A. Well, since you show it out to me in the light of it, I guess I did to Mr. Hoppes. I did not understand what you were trying to get at."  Re-

cross-examination: "Q. What did you say to Mr. Hoppes? A. We were talking about it one day, and I was telling him about my stuff being damaged by the water, and he said he thought 'we could get damage for it, and I said, if we can, we ought to have it. To put stuff out there and lose it out, we ought to have something for it. Q. What else did you say to him about it? A. We did not say a great sight about it. He said we could go up here and try to get damages for our stuff, and I suppose he came up and seen about it, and I came afterwards. I never told him that he could have my claim against the company or the claim should be transferred to him, so that he could bring the suit. I do not know that I ever told him he could have my claim. I never told him it should be his claim for the purpose of bringing suit." Here counsel for plaintiff again suggested a dismissal of the claim, but the court expressed the view that the witness did not wish it to be understood that he had given his claim away for fear he would get nothing for it, to which the witness assented. "By the Court: But in this talk with Mr. Newman did you authorize him and Mr. Hoppes to bring this action for you, and what was recovered you were to get? A. Certainly that is the way it was." Here defendant moved the answer be stricken as a conclusion, and the court explained that he was interfering because of the witness' misunderstanding and inquired if plaintiff still insisted on dismissing the claim. Counsel replied he would take the chance of trial. Again the witness was asked on cross-examination to relate what was said between him and Hoppes or between him and Newman, and answered that the talk was that they ought to have damages, that Hoppes said he was going to see about bringing suit; that he did not remember that anything was said about bringing it in his name; that "there was nothing said about his suing for my claim, or me suing for his claim, or each fellow bringing his own suit, only he was coming to see about it;" that at Hoppes'

suggestion he saw Newman, and supposed "he talked it was going to be brought in Hoppes' name," but "there was nothing much said about it. . . . Hoppes said it was to be brought in his name. This was before we ever consulted a lawyer." Counsel for plaintiff then asked whether he told attorney for plaintiff, "You would assign your claim to Mr. Hoppes as well as the rest of them, and he would bring the action for all of them," and the answer was: "Yes; I guess I did." Q. And you consented to that, did you not? A. Yes, sir." It will be observed that, when the witness was called upon to relate what was said, he insisted that nothing which might be construed as an assignment was said to either counsel or plaintiff, but in the first instance stated there was an assignment, and such might be inferred from his last assertion that he had consented. Whether the latter was induced by fear that the claim might be dismissed and what he had said before was true ought not to have been determined by the court, but the issue as to whether there was any assignment of his claim to plaintiff should have been submitted to the jury.

V.   Exception is taken to the instruction on measure of damages, and it may be that the rule applied to the claim of plaintiff was not quite consistent with that applied to the claim of Plummer. Aside from this, the law as laid down was well calculated to the ascertainment of the damages suffered. See *Tretter v. Railway,* 126 N. W. 339; *McMahon v. Dubuque,* 107 Iowa, 63, 77 N. W. 517, 70 Am. St. Rep. 143.

Because of the errors pointed out, the judgment is *reversed.*