A. J. HANLEY, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO. ET AL., Appellants.

Carriers: INJURY TO LIVE STOCK: NEGLIGENCE: BURDEN OF PROOF. The shipper of live stock who accompanies the shipment has the burden of showing negligence of the carrier causing injury to the stock, even though the jury may find that the shipper was not negligent; and an instruction under such circumstances that the burden is upon the carrier to show that the injury was due to some cause over which it had no control was erroneous.

Same: CONTRACTS OF SHIPMENT: SPECIFICATION OF ROUTE: ORAL EVIDENCE. A carrier can not impose upon the shipper any duty of accompanying the shipment; his duties only arise out of the fact that he does accompany the shipment, and therefore he may rely on the fact that the shipment will be made over the route specified in the bill of lading: So that where the shipper undertook to accompany the shipment but left the train because his car was taken over a different route, his testimony, in an action for injury to the shipment, concerning the verbal agreement as to the route was admissible as explaining his conduct in leaving the train, although the route was specified in the written bill of lading.

Same. Where the original contract did not specify the route of shipment but the same was contained in a contemporaneous bill of lading, not offered in evidence by either party, the shipper's testimony that the route was agreed upon when the contract of shipment was made was competent to corroborate his version of the contents of the bill of lading.

Same: LIABILITY OF CARRIER. A carrier of live stock is not liable for injury thereto while in transit unless the result of its negligence, regardless of whether it was such as would ordinarily occur or was of an extraordinary character.

Same: DAMAGES: EVIDENCE. Where the shipper, in estimating the damages to the shipment, has given his estimate of the value thereof had it been delivered in reasonably good condition and also

the value in its actual condition, he may be cross-examined concerning what he paid for the shipment, as a test of his opinion as to value.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

SATURDAY, FEBRUARY 10, 1912.

THIS is an action for damages for negligent delay in the shipment of a carload of horses, and for a failure to feed and water the same during transportation. There was a verdict and judgment for the plaintiff for $275. The defendant appeals.—*Reversed.*

*J. C. Cook* and *C. S. Ranck,* for appellant.

*Remley & Calkins,* for appellee.

EVANS, J.—The shipment in question was made from Miles City, Mont., to Cedar Rapids, Iowa, over the line of appellant's railroad. The majority of the horses in question consisted of weanling colts. The others consisted of yearlings and two year olds and one or two older horses. They were shipped from Miles City on Monday morning, September 21, 1908. They arrived at Cedar Rapids on Sunday night, September 27th, and were delivered to a connecting carrier for transportation to Iowa City on Monday morning. This connecting carrier was made a joint defendant in the trial court, but the verdict of the jury was in its favor. We have therefore no occasion to deal with any question affecting its liability. At the time of the shipment, the defendant issued to the plaintiff a receipt for the shipment, which included certain contractual conditions which will be referred to later. The plaintiff also alleged in his petition that the defendant agreed to make the shipment by a specified route, viz., to Aber-

deen, S. D.; thence to Sioux City; thence to Cedar Rapids. He also averred that at the time the shipping receipt was issued, a bill of lading was also issued and exhibited to the plaintiff, and delivered to the conductor, which specified the route of shipment in accordance with the verbal agreement, as above stated. At the time of the issuance of the shipping receipt, it was contemplated that the plaintiff should accompany the shipment, and a pass was furnished him for the purpose. He was unable, however, to leave Miles City upon the train which included his car. He followed later upon a passenger train, and overtook the shipment at Selby, S. D., seventy miles west of Aberdeen. At this point the horses were unloaded, and the plaintiff procured the necessary feed and water for the same. They remained in Selby from Tuesday afternoon until Wednesday morning, when they were again loaded, and their transportation was resumed. In some manner not explained in this record, the car was included in a train destined for St. Paul, instead of Sioux City. This fact was not discovered by plaintiff until some time after the train had passed through Aberdeen. He protested to the conductor, but without avail. The train reached St. Paul Thursday night, thirty-two hours after leaving Selby. Upon reaching St. Paul, the caboose in which plaintiff was riding was cut off from the train, and the switch engine took control of the train. The plaintiff, with the assistance of the conductor and the yardmaster, undertook to find his car, but was unable to do so. He was told that it would be at a certain transfer in the morning. This promise failed him, and he was unable to find his car the next morning. He applied at headquarters, and was directed to a certain office, whither he went. He was informed here that they could not locate the car, but would look it up speedily. He informed the persons in charge of such office that he desired to take a morning train home at half past eight, to which such person replied, "That

was probably the best thing to do under the circumstances." He thereupon took his train for home. In support of the facts stated up to this point, the evidence is undisputed. The shipment reached Savanna at 4 o'clock Sunday morning. They were unloaded and fed at this point and forwarded later in the day to Cedar Rapids, where they arrived Sunday night, and were again unloaded. What care they had while at St. Paul, or whether they were fed or watered or unloaded there, does not appear from the testimony. When the shipment arrived at its destination, one horse was missing, another was cast in the car, and many were injured to a greater or less extent. The manes and tails of many of the colts were eaten off.

I. In the fifth instruction, the trial court instructed the jury on the theory that the plaintiff accompanied the horses, and instructed that: "It would be his duty while accompanying them to see to it that they were properly fed, watered, and otherwise cared for, and the burden is upon the plaintiff to show that any damage to said horses, if any, was not due to any fault or negligence on his part. If you have determined from the evidence, and under these instructions, that plaintiff has shown an agreement to carry the horses to Iowa City and that any injury thereto, if any, was not due to any negligence on his part, *then he would be entitled to recover, unless the defendants relieve themselves of liability, as hereinafter instructed; and the burden is upon the defendants, in order to relieve themselves, to show that the damages to said horses, if any, were due to some cause over which they had no control.*" The appellant complains of this instruction. Its first complaint is that it was error therein to lay upon the defendant the burden of proof as to any alleged injury resulting to the stock while accompanied by the owner. The point here raised has been recently considered in the

1. CARRIERS: injury to live stock: negligence: burden of proof.

case of *Mosteller v. I. C. Railway,* 153 Iowa, 390, and we will not repeat or review the discussion therein made. Under the holding in that case, the instruction above quoted is erroneous to the extent indicated by the italics.

II.   The plaintiff pleaded that his contract of shipment was partly verbal and partly in writing. The trial court instructed the jury as follows: "As heretofore stated in these instructions, the plaintiff claims that his contract of shipment was partly verbal and partly in writing. Now, in this connection you are instructed that, under ordinary circumstances, it is the law that prior oral statements, declarations, or representations are merged in a written contract, if one is subsequently executed covering the same subject matter; and this is true, unless it is claimed that the contract is partly verbal and partly in writing, and it is shown that the verbal portion is not in conflict with the written contract. So, under this instruction, it is for you to determine whether the claimed verbal contract of shipment from Miles City, Mont., to Iowa City is in any manner in conflict with the written contract which has been offered in evidence, and if it is the written contract would control." The court also instructed the jury that if the defendant railroad company agreed to transport the shipment by way of Sioux City that such fact would relieve the plaintiff of the duty of accompanying the shipment by way of St. Paul, and that he had a right to abandon the same.

2. SAME: contracts of shipment: specification of route: oral evidence.

Complaint is made that the trial court thus permitted the written contract of shipment to be varied by a prior verbal contract. We are at a loss to see why a verbal contract was pleaded by the plaintiff. No alleged right of his is based upon it. As a circumstance, it tends to explain his conduct. On the other hand, we can see no ground of complaint to the defendant by reason of the testimony offered. The contract of shipment, which was

introduced in evidence, is entirely silent on the question of route. The evidence is undisputed, however, that a bill of lading was made out by the railroad agent contemporaneous with the contract of shipment; and that this bill of lading did specify the route in accordance with plaintiff's contention. The plaintiff had an undoubted right to rely upon this routing when he undertook to accompany the shipment. He was not bound to accompany the shipment by reason of any provision in the contract. Only the fact of accompanying the shipment cast any duties upon him in that respect. *Grieve v. Railroad Co.*, 104 Iowa, 659; *Powers v. Railroad Co.*, 130 Iowa, 615; *Winn v. American Express Co.*, 149 Iowa, 259.

He had a right to explain the reason for his leaving the train at St. Paul. According to his contention, he was unacquainted in St. Paul. He knew it to be a large center for shipping horses, and he desired to avoid it. When the shipment arrived there, he found himself entirely helpless to locate his car. When he undertook to accompany the shipment, he was expecting to go the stipulated route. This is his story. We think, therefore, that it was competent for him to show the verbal arrangement for the specified route in explanation of his own conduct.

We think such testimony was admissible upon another ground. The waybill was not introduced in evidence; neither party having a copy of the same. The plaintiff testified, as to its contents, to the effect that 3. SAME. it specified the Sioux City route. We think the fact that such route had been verbally agreed upon in advance had some tendency to corroborate his actual testimony as to the contents of the waybill. There was no conflict in fact between such verbal communication and the written contract of shipment. The trial court could properly have so instructed the jury. The instruction above quoted was correct as an abstract statement of the

law. If we should hold it to be inapplicable to the evidence, it was nevertheless wholly without prejudice.

III.   The trial court gave the fourteenth instruction as follows:  "(14) If you have found that the plaintiff is entitled to recover upon his claim for damages to the horses in controversy, and the loss of the horse claimed to have been lost, you are instructed that the amount of such recovery would be the difference between the reasonable market value of the horses delivered at the time of their delivery in Iowa City, Iowa, in good condition, and their reasonable market value in their damaged condition, if any, as shown by the evidence in the case.  You are instructed, however, that plaintiff could not recover for ordinary gaunting, scratching, biting, or kicking, which was not caused by the fault or negligence of the defendants; that is, for such gaunting, scratching, kicking, or biting as would ordinarily occur in transporting horses from Miles City, Mont., to Iowa City, and the market value of the horse lost, if one was lost or not delivered."  Complaint is made of the last sentence therein.  Particular objection is urged to the use of the words "ordinary" and "ordinarily occur."  We think it must be said that the language of the instruction is unfortunate at this point. Clearly the defendant was exempt from liability for all "gaunting, scratching, biting, or kicking, which was not caused by the fault or negligence of the defendants," regardless of whether it was "ordinary" or extraordinary. If such conduct of the horses was not caused by any neglect of the defendant, it was not material whether it was such as would ordinarily occur or not.  The defendant was no more liable in such a case for any extraordinary occurrence than for an ordinary one.  The error is somewhat emphasized by the evidence in this case.  Considerable evidence was introduced to show that one horse was particularly vicious in kicking and biting the other horses.

4. SAME: liability of carrier.

Under this evidence, the kicking and biting was quite beyond the "ordinary," and under this instruction the liability of the defendant is thus made to depend, by implication, upon the measure of such biting and kicking, rather than upon the cause of it.

IV. The plaintiff testified as a witness in his own behalf, and gave his estimate of the value of the horses as they would be in a reasonably good condition at the place of their destination. On cross-examination, he was interrogated as to the price

5. SAME: damages: evidence.

he paid for these horses in Montana. This line of examination was refused by the court, and complaint is made of such ruling. Doubtless the theory of the ruling was that the value of the horses at this end was the criterion by which the measure of damages should be ascertained. But this did not render the proposed cross-examination improper. The plaintiff having testified to his mere opinion of their value at Iowa City, we think that defendant was entitled to test such opinion by inquiring as to the actual price paid, even in Montana. While such price would not be controlling, it would be a proper circumstance for consideration by the jury in weighing plaintiff's direct evidence. That evidence of price paid is admissible on the question of value, see *Thompson v. Anderson,* 94 Iowa, 554; *Ranck v. City of Cedar Rapids,* 134 Iowa, 563. We would hesitate to reverse this case upon this ground alone. But, in view of our holding in the preceding paragraph, a new trial must be ordered in any event.

For the reasons stated, the judgment below must be *reversed.*