MARTIN WOODS COMPANY, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Carriers:** CONVERSION OF UNCLAIMED GOODS: MEASURE OF DAMAGES.
1 The measure of a carrier's liability for the technical conversion of unclaimed goods, by disposing of them without notifying the consignee of the transportation charges, and advertising and selling the same as provided by statute, is the reasonable market value of the same at the point of destination on the date of sale.

**Same:** EVIDENCE: MARKET VALUE: CROSS-EXAMINATION. Where a wit-
2 ness had testified to the market value of an article he should have been permitted on cross-examination to state what he paid for the same article, as a test of his candor and the weight of his evidence in chief; but the offered evidence in this case was too indefinite and unimportant to render its rejection reversible error.

**Same:** EVIDENCE: PREJUDICE. Where a witness had already testified
3 that the quantity of peaches in question, which were overripe and subject to decay, could not be sold at their destination in a day without a reduction from the market price, the further inquiry as to what the price would have to be, as compared with the price of such peaches if they were simply sufficient to supply the normal

demand for peaches of that kind, was properly refused, as too indefinite; there being no attempt to show by the witness, what in his opinion the peaches would have brought in that market under such circumstances, or to show that fact by others.

**Same:** EVIDENCE: PREJUDICE. Admission in evidence of the bills of lading issued by a connecting carrier for fruit sold by defendant as unclaimed, without advertisement or notice to the consignee, was not prejudicial to the carrier, where it admitted receipt of the consignment and there was nothing in the bills of lading inconsistent with its contention.

*Appeal from Scott District Court.*—HON. F. D. LETTS, Judge.

THURSDAY, OCTOBER 23, 1913.

THIS is an action for damages for alleged conversion of two car loads of peaches, which had been consigned to the plaintiff, and which had been received by the defendant as a common carrier, to be delivered to the plaintiff at Davenport. There was a verdict and judgment thereon for the plaintiff. The defendant appeals.—*Affirmed.*

*F. W. Sargent* and *J. H. Johnson* and *Cook & Balluff,* for appellant.

*Isaac Petersberger,* for appellee.

EVANS, J.—The plaintiff is a corporation engaged in the wholesale fruit business at Davenport. Prior to September 2, 1910, it had purchased through Des Moines brokers, Chaney & Co., two car loads of Washington Elberta peaches to be shipped from the state of Washington to Davenport, Iowa. The defendant received such cars from the Northern Pacific Railroad Company, as a connecting carrier; and transported the same from the point of transfer to Davenport. It delivered the first car on its "team track" at Davenport on September 2, 1910, and immediately notified the plaintiff of its arrival. The plaintiff's inspector on the same day examined the goods and reported the same as "overripe," and the plaintiff refused to accept the same. On September 6th, the

defendant delivered the second car on its "team track" and notified the plaintiff on the same day. Plaintiff's inspector examined this car on the same day, and. made a like report as on the first car. The plaintiff refused to receive this car also. The refusal of the second car was based on the additional ground that it was shipped too soon, and that there should have been an interval of ten days between shipments. On September 9th the defendant moved the cars to its icing plant at Silvis, Ill., for the purpose of re-icing the cars and preserving the fruit. This station was four or five miles east of Davenport; the company having no icing plant at Davenport. The cars and their rejected contents remained at Silvis until September 15th. An inspection on that date disclosed a deteriorating condition, which made it imperative that they be disposed of at once. They were immediately shipped to Chicago by the defendant and sold on the market there on the following day at prices ranging from 25 to 45 cents per box. Each car contained 1,134 boxes.

I. The defendant wholly failed to observe the requirements of.sections 3130-3134 of the Code. It is conceded that

**1. CARRIERS: conversion of unclaimed goods: measure of damages.** such failure rendered it guilty of a technical conversion. The measure of its liability, therefore, for such conversion was the reasonable market value of the goods at Davenport on September 15, 1910. The question of value was the only disputed issue in the case.

The principal questions presented for our consideration by the appellant relate to rulings on the admission of evidence.

The principal witness on behalf of the plaintiff was Tanner, its general manager. He testified that the market value of peaches at Davenport on September 15, 1910, was from

**2. SAME: evidence: market value: cross-examination.** seventy-five to eighty-five cents per box. On cross-examination he was asked to state what he paid for such peaches. The court sustained an objection as incompetent, immaterial, and irrelevant, and

not the proper measure of damages. Complaint is now made of such ruling. The attempted cross-examination was proper both as a test of the candor of the witness and of the weight of his opinion. *Hanley v. Railway Company*, 154 Iowa, 60, and cases cited therein. The ruling was therefore technically erroneous. In the light of the whole record, however, we cannot deem the error a reversible one. There is nothing in the record to indicate whether an answer to the question would have been favorable to the defendant, nor did the defendant's attorney indicate in any way what he expected to disclose by such cross-examination. The testimony of this witness as to the market value at Davenport was finally allowed to stand undisputed. Although the defendant introduced testimony to show the market value in Chicago, it offered no testimony to show the market value in Davenport except that one of its witnesses testified that the market value would be somewhat greater in Davenport than in Chicago. The jury found a valuation of seventy cents per box, which was less than that stated by Tanner. In the light of this record we think the proposed evidence was too uncertain and unimportant to warrant a reversal, and its exclusion must be deemed nonprejudicial.

II. J. J. Buzzard was called by the defendant as an expert witness, who was engaged in the wholesale fruit business in Davenport. The following was a part of his examination by the defendant: "Q. If you had a car

3. SAME: evidence: prejudice.

of peaches that was received here on the 2d day of September, and at that time were overripe, and they stayed in the car under refrigeration until the 16th day of September and subject to the decay which would occur during these fourteen days, would there be a market in Davenport on the 16th day of September for a car of such peaches, such box peaches? A. Yes; I believe it could be sold, if sold reasonable enough, cheap enough. Q. Would there be a market for two cars under such conditions as that? A. Do you mean Davenport or the three cities? Q. The

three cities; that is, calling the population in the three cities 100,000 and Davenport half of that. A. Yes; if sold cheap enough a market could be found for both cars. Q. How would the price have to be, as compared with the price of such peaches, if they were just sufficient to supply the normal demand for peaches of that kind that accrue by reason of these fruit stands? (Objected to as incompetent, immaterial, irrelevant and no foundation having been laid. Sustained. Defendant excepts.)" The plaintiff complains of the adverse ruling here shown. The question objected to was very indefinite in form. Its apparent purpose was to elicit testimony to the effect that so large a quantity of peaches could not be sold upon the Davenport market in a day without a reduction from the market price. The witness had already testified to such effect. The defendant did not attempt to show by this witness what in his opinion the peaches would have brought on the Davenport market under such circumstances. Neither did it show it by any other witness. There was no error in the particular ruling complained of.

III. The plaintiff introduced in evidence the two bills of lading received from the consignors in the state of Washington. These purported to be issued by the Northern Pacific Railway Company, from whom the defendant had received the cars. The defendant objected to these exhibits on the ground that

**4. SAME: evidence: prejudice.**

there was no competent proof of their genuineness, and the objection was overruled. The appellant presents such ruling for our consideration. If the defendant were denying the receipt of the cars, a very different question would be presented. Such was the case of *Hill v. Adams Express Co.,* 74 N. J. Law, 338 (68 Atl. 94), on which the appellant places much reliance. But the receipt of the particular cars is not in dispute. We are unable to see any materiality in the bills of lading as relating to the issues in this case. They might well have been rejected as immaterial. On the other hand, we find nothing that could have been of any possible preju-

dice to the defendant. There is nothing in the contents which is in any manner inconsistent with the contentions of the defendant. So far as the identification is concerned, they had been in the possession of the defendants up to the time of trial, and were produced by the defendant upon notice to produce. They had been received by the defendant from the plaintiff as the genuine bills of lading, and no question of their genuineness was ever raised in the previous negotiations between the two parties. We are not prepared to say but that their genuineness had been impliedly admitted by the defendant prior to the trial. In any event their admission was clearly without prejudice.

The foregoing are the principal errors assigned. Some other minor complaints are suggested. We find no merit in them.

On the general merits of the case there are some features of it that impress us unfavorably against the plaintiff, and which suggest quite strongly that the plaintiff may have profited by its loss. There is an apparent lack of candor and manifest contradiction in some of the testimony for plaintiff; but these were necessarily matters for the jury. The defendant could have protected itself by the observance of a simple statute. Having failed to do so, it was bound to respond to the market value. If the jury was in fact too liberal in its assessment, the defendant has furnished us no criterion by which we can so find.

The judgment below must therefore be *Affirmed*.

WEAVER, C. J., LADD and PRESTON, JJ., concur.