JAMES BRITVEN, Appellee, v. OCCIDENTAL INSURANCE COMPANY, Appellant.

No. 46446.

APRIL 4, 1944.

Westfall & Laird, of Mason City, for appellant.

L. R. Boomhower, of Mason City, for appellee.

GARFIELD, J.—Under the coinsurance clause in the policy, the insurer is liable only for such percentage of the loss as $4,000, the face of the policy, bears to eighty per cent of the actual cash value of the building immediately before the fire. The insured must bear the balance of the loss. It is therefore apparent that it is to plaintiff's advantage to place a low value on the building before the fire. Likewise, it is to defendant's advantage to fix such value higher.

The building, 35 by 60 feet, a one-story brick business structure in Mason City, built in 1938, was partially destroyed on January 1, 1943. There is not much dispute that the damage to the building approximated $4,200. Testimony for plaintiff is that it cost $4,323 to replace the damaged portion. Something of a bulge in one wall was not repaired. The principal controversy is over the value of the building before the fire. Plaintiff's witnesses testified such value did not exceed $6,000. Defendant's witnesses fixed it at $7,500 to $8,900. The jury evidently accepted the testimony for plaintiff. The verdict was for $3,500, which is the same percentage of $4,200, the amount of the loss, that $4,000, the face of the policy, is of $4,800, eighty per cent of the value of the building before the fire, as claimed by plaintiff. Had the jury valued the building before the fire at $8,000, plaintiff's recovery should have been about $2,625.

Defendant complains that the court erred in restricting its right of cross-examination, in refusing to admit evidence of the replacement cost of the building just before the fire, and in instructing the jury that "actual cash value" means "market value."

The court instructed the jury that the loss was the difference in value of the building immediately before and immediately after the fire. Defendant says that, conceding this to be proper, it was entitled to show, as an aid to the jury in fixing the value before the fire, the replacement cost of the building. The rulings on evidence of which defendant complains are as follows:

Riekens, a contractor who estimated the cost of replacing the damage in the hope of getting the work, testified for plaintiff that seventy per cent of the building was destroyed by fire. On cross-examination he said he figured the cost of replacing the damage at $3,700. This further cross-examination followed:

"Q. Did you figure the cost to erect the entire building at that time? A. I was figuring on the cost of replacing * * * what was damaged by the fire. Q. But at that time did you figure what it would cost to replace the entire building as of January 1st, 1943? [Objected to as not proper cross-examination, immaterial, having reference to no proper measure of damages, incompetent and it would be admissible, if at all, only as part of defendant's case.] Court: Sustained * * * I think * * * it isn't cross-examination. * * * whether it is a proper matter for * * * testimony * * * on your side * * * is a proposition that we will meet when we come to it."

Anderson, another contractor who estimated the cost of replacing the damage, testified for plaintiff that the value of the building was about $6,000 just before the fire and $1,600 to $1,700 just afterward; that he submitted a bid of $4,140 for replacing the damage. On cross-examination, Anderson testified three times, without objection, that it would have cost $6,000 to $6,500 to replace the entire building on January 1, 1943. He also said he could and would figure such cost. To defendant's request that he do so and state what such cost was, plaintiff's objection as not cross-examination, referring to an improper measure of damages, incompetent, irrelevant, and immaterial, was sustained. Defendant's counsel then stated that he proposed to show in detail by the witness that the part of the building remaining after the fire would cost far in excess of the value of the building after the fire, to which he testified.

Hanson, the contractor who replaced most of the damaged parts, prepared an estimate of the cost of such replacement, which was submitted to plaintiff and the insurance adjuster. This estimate, offered by plaintiff, was received in evidence. This witness had also prepared an estimate, exhibit 2, of the cost of constructing the entire building on January 1, 1943. Defendant produced exhibit 2 and sought to cross-examine him regarding it. Hanson said several times that quotations of prices of a number of the items were not available and as to them exhibit 2 shows his judgment of the cost. Exhibit 2 gives the total replacement cost of the building at the time of the fire as $9,907. The court ruled the exhibit and questions regarding it were not proper cross-examination.

Thereupon defendant called Hanson as its witness. However, the court again excluded defendant's offer of exhibit 2 and sustained plaintiff's objections to questions as to the replacement cost of the entire building at the time of the fire. Hanson did testify without objection that the value of the building just before the fire was "possibly $8,000" and after the fire "about $5,000." On plaintiff's cross-examination Hanson testified that these estimates were based entirely on replacement costs and, "I don't think I would be qualified to state it except on the basis of replacement cost." On plaintiff's motion, Hanson's testimony as to values (of $8,000 and $5,000) was then stricken.

I. The above rulings, except the one last referred to, constitute reversible error. Defendant concedes that the value of the building before the fire should not be determined solely by the replacement cost of the building at that time. Hence the last ruling was proper. But as defendant contends, it had a right to show, as bearing on the actual value of the building before the fire, what it would then have cost to build it.

One reason the court seems to have fallen into error is that it incorrectly assumed the words in the policy, "actual cash value" of the insured building, are synonymous with "market value."

Ordinarily, where a fire loss occurs, the insurer is obligated to make fair compensation or indemnity for such loss, not exceeding the amount of the policy. This is the basic principle. 29 Am. Jur. 886, section 1176; id. 890, section 1184; 26 C. J. 351, section 450. See, also, McMahon v. City of Dubuque, 107. Iowa 62, 77 N. W. 517, 70 Am. St. Rep. 143. No hard and fast rule can be laid down by which the amount of such indemnity can be determined in all cases. 25 C. J. S. 608, section 85; annotation L. R. A. 1917A, 367. Where insured property that is destroyed is bought and sold in the market in the ordinary course of dealing, its market value is usually taken to be its "actual cash value" at the time of the loss, for which recovery may be had. Farmers Merc. Co. v. Farmers Ins. Co., 161 Iowa 5, 21, 141 N. W. 447; Kennedy v. Treleaven, 103 Kan. 651, 175 P. 977, 7 A. L. R. 274, 276; 29 Am. Jur. 890, section 1185; 26 C. J. 535, 536, section 749; annotation 56 A. L. R. 1155, 1156. This is because the receipt of such sum by the insured enables him to replace the

property he has lost and thus be restored to the position he was in before the fire. McAnarney v. Newark F. Ins. Co., 247 N. Y. 176, 159 N. E. 902, 56 A. L. R. 1149, 1152; Wall v. Platt, 169 Mass. 398, 48 N. E. 270, 273.

Where, however, the property has no recognized market value that is fairly indicative of its real value, the "actual cash value" of the property must be determined without resort to market value. This rule is frequently applied in cases involving household goods and wearing apparel. See McMahon v. City of Dubuque, supra; 25 C. J. S. 627, 629, section 88; annotation 63 A. L. R. 240. It is apparent that a building, especially one such as plaintiff's, has little or no market value apart from the ground on which it stands. Ordinarily, a building is bought and sold either for the purpose of removal or in connection with the land on which it is situated. Obviously, market value of a building for removal purposes is usually far below its real or intrinsic value. The land on which a building is situated is not insured. Market value, therefore, is generally not the test in determining values of buildings in connection with fire losses. Scott v. Security F. Ins. Co., 98 Iowa 67, 71, 72, 66 N. W. 1054; McMahon v. City of Dubuque, supra, 107 Iowa 62, 67, 77 N. W. 517, 70 Am. St. Rep. 143; Kennedy v. Treleaven, supra, 103 Kan. 651, 175 P. 977, 7 A. L. R. 274, 276; Prestonburg Superior Oil Gas Co. v. Vance, 215 Ky. 77, 284 S. W. 405, 47 A. L. R. 483, 487; Wall v. Platt, supra, 169 Mass. 398, 48 N. E. 270, 274; McAnarney v. Newark F. Ins. Co., supra, 247 N. Y. 176, 159 N. E. 902, 56 A. L. R. 1149, 1153; 15 Am. Jur. 522, 523, 524, sections 112, 114; 29 Am. Jur. 890, 891, section 1185; annotation L. R. A. 1917A, 367, 369. See, also, Helm v. Anchor F. Ins. Co., 132 Iowa 177, 181, 185, 109 N. W. 605.

Generally speaking, in determining actual values of buildings the evidence covers a somewhat wider range than where market value is the test. It is proper to bring to the aid of the jury all facts and circumstances which fairly tend to prove actual value, such as the size and dimensions of the building, the kind and quality of materials of which it is constructed, its age, the amount of wear and tear to which it has been subjected, its state of repair, and all other pertinent matters. Except where too remote, it is usually proper to show the original cost of the

building. Scott v. Security F. Ins. Co., supra; 15 Am. Jur. 524, 525, section 114; 25 C. J. S. 608, 609, section 85a; 26 C. J. 536, section 750; annotation 7 A. L. R. 277; annotation L. R. A. 1917A, 367, 369. See, also, Ranck v. City of Cedar Rapids, 134 Iowa 563, 111 N. W. 1027; annotation 63 A. L. R. 240, 254.

Almost invariably, it may also be shown, as bearing on the question of actual value, what it would cost at the time in question to replace the building. Of course, where the reproduced building would be more valuable than the former one, because of its age or condition, deduction from such cost should be made for such depreciation. (The evidence here shows what the depreciation was on this building down to the time of the fire.) Scott v. Security F. Ins. Co., supra, 98 Iowa 67, 66 N. W. 1054; McAnarney v. Newark F. Ins. Co., supra, 247 N. Y. 176, 159 N. E. 902, 56 A. L. R. 1149, 1154, and annotation 1155, 1160; Jacksonville, T. & K. W. R. Co. v. Peninsular L. T. & M. Co., 27 Fla. 1, 9 So. 661, 17 L. R. A. 33, 61; Wall v. Platt, supra, 169 Mass. 398, 48 N. E. 270, 274; 29 Am. Jur. 891, section 1186; 15 Am. Jur. 524, 525, section 114; 25 C. J. S. 608, 609, 610, section 85a; annotation 7 A. L. R. 277, 281, 300. These and other authorities recognize that the principal factors in determining the actual value of a building are usually the original cost, the cost of replacing it, and a proper allowance for depreciation from use, age, and other like causes. See, also, Chicago, R. I. & P. R. Co. v. Galvin, 59 Okla. 258, 158 P. 1153, L. R. A. 1917A, 365, and annotation 367.

In the case at bar, plaintiff offered evidence of the original cost of the building, as well as the cost of replacing the damaged parts. The cost of reproduction ordinarily has fully as much bearing on the actual value of a building at a particular time as does the original cost, especially where there has been a substantial change in building costs in the interval. Kennedy v. Treleaven, supra, 103 Kan. 651, 175 P. 977, 7 A. L. R. 274, 276; Jacksonville, T. & K. W. R. Co. v. Peninsular L. T. & M. Co., supra, 27 Fla. 1, 9 So. 661, 17 L. R. A. 33, 61.

It seems probable that the reason for the controversy here over the admissibility of evidence of replacement cost is the increase in construction costs between 1938 and January 1, 1943,

688

due to the war and other causes. Regardless of such increase, however, cost of reproduction just prior to the fire obviously has a legitimate bearing on the actual value of the building at that time and the jury was entitled to the benefit of the evidence. It was proper for defendant to cross-examine Riekens and Anderson, witnesses on value, with regard to such replacement cost. This would aid the jury in determining what weight to attach to the estimates given by them on direct examination. As bearing on this question, see Turner v. Hartford F. Ins. Co., 185 Iowa 1363, 1378, 172 N. W. 166; Woods Co. v. Chicago, R. I. & P. Ry. Co., 161 Iowa 639, 641, 642, 143 N. W. 497; Hanley v. Chicago, M. & St. P. Ry. Co., 154 Iowa 60, 67, 134 N. W. 417; Helm v. Anchor F. Ins. Co., supra, 132 Iowa 177, 184, 109 N. W. 605. Even more clearly, it was also proper for defendant to show by Hanson, as its witness, what it would have cost to construct the building at the time of the fire.

II. Defendant further claims error in instructions 3 and 4, which state that the "actual cash value" of the building means its market value. Defendant excepted to these instructions as incorrect statements of the law and because there was no evidence that there was any market for buildings without a lot. It follows from what we have already said that these instructions were reversible error.

It is not only a matter of common knowledge widely recognized by the authorities (including Scott v. Security F. Ins. Co., supra, 98 Iowa 67, 72, 66 N. W. 1054, and McMahon v. City of Dubuque, supra, 107 Iowa 62, 67, 77 N. W. 517, 70 Am. St. Rep. 143) that a building apart from the ground on which it stands usually has little if any market value, but there is testimony here to that effect. Plaintiff's value witness Stubbs testified on cross-examination:

"In the sale of land you couldn't separate the land and the building very well. I never sold a building without the land. A building might be sold without the land, but I don't know of a brick commercial building being sold without the land. As a general proposition it wouldn't be feasible."

In addition to the authorities heretofore cited, Gere v.

Council Bluffs Ins. Co., 67 Iowa 272, 276, 23 N. W. 137, 25 N. W. 159, bears on this assignment of error.—Reversed.

SMITH, C. J., and OLIVER, HALE, MILLER, WENNERSTRUM, MANTZ, and MULRONEY, JJ., concur.

BLISS, J., takes no part.