ST. LOUIS TESTING LABORATORIES,
INC., a Corporation, Appellant,

v.

MISSISSIPPI VALLEY STRUCTURAL
STEEL COMPANY, a Corpora-
tion, Appellee.

No. 18488.

United States Court of Appeals
Eighth Circuit.

April 10, 1967.

William R. MacGreevy, of Hocker, Goodwin & MacGreevy, St. Louis, Mo., for appellant.

John P. Emde, of Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for appellee, Wm. H. Armstrong, St. Louis, Mo., with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

St. Louis Testing Laboratories, Inc., appellant-plaintiff, brought suit against Mississippi Valley Structural Steel Company, appellee-defendant, for payments allegedly due for performance of metallurgic tests made for defendant upon the steel superstructure of the Chain of Rocks Bridge across the Mississippi River between St. Louis, Missouri and Madison County, Illinois.

Jurisdiction here is based upon diversity of citizenship and the requisite amount in controversy. The case was tried to the court without a jury and the District Court's opinion is reported at 254 F.Supp. 47 (1966).

In preparing to bid the steel superstructure on the bridge job for the Missouri Highway Department, defendant sought a quotation for the radiographic and magnetic inspection work required under the plans and specifications of the Highway Department. Plaintiff quoted a price of $25,321.68 for the inspection work and defendant used this figure in bidding the total job. Defendant was low bidder and was awarded the contract.

There were various conversations, conferences and letters between plaintiff and defendant, including a letter from plaintiff to defendant dated June 25, 1963, agreeing to perform all the inspections "per specification" for the total sum of $25,321.68. Following this letter, defendant forwarded to plaintiff a purchase order for the work in accordance with the price quoted by plaintiff in the June 25, 1963 letter. The letter, purchase order, pertinent parts of the contract specifications and more elaborate statement of the facts are set forth in the District Court's opinion, and need not be repeated here.

Prior to completion of the bridge superstructure, the Missouri State Highway Department and defendant agreed to a modification of the contract by substituting 100% radiographic inspections for the magnetic particle inspections on all butt splices and on all girders for the unperformed portion of secondary welds. The parties here were in disagreement regarding payments for tests in addition to the original 2644, but have now agreed that the cost of the omitted magnetic particle inspection is $1430.00.

On appeal, plaintiff concedes that it had agreed to perform all the original 2644 radiographic inspections for a fixed fee and that it is not now due any further compensation for this work. It contends, however, that it is due payment for the reasonable value of 3341 radiographic inspections consisting of 954 reexaminations and 2387 additional examinations. At trial, defendant contended that it was liable only for the additional payment resulting from the 954 reexaminations occasioned by its own work. The District Court found that plaintiff was entitled to a reasonable value for the entire 3341 additional inspections and that $3.50 per inspection was reasonable.

Plaintiff has appealed solely on the grounds that the award was inadequate —that defendant admitted this at trial and is bound thereby—and that there is no substantial evidence supporting the District Court's finding which it asserts is clearly erroneous.

On this issue, we are governed by the standards articulated by Judge Blackmun of this court in Barber-Greene Co. v. Bruning Co., 357 F.2d 31, 36 (8th Cir. 1966):

"We have in mind the accepted standards that, in a case tried to the court, its findings are presumptively correct, that we are to take that view of the evidence favorable to the appellee, that the findings are not to be disturbed unless clearly erroneous, and that the appellee is entitled to the benefit of all favorable inferences. (Citations omitted.)"

It is agreed here that the number of inspections required by the original contract was 2644 and, under plaintiff's theory, $8,646.00 of the original contract price was for the radiographic inspections. We note, as did the trial court, that the price per radiographic inspection under the original contract was $3.27. Plaintiff now asserts that the court determined the quantum meruit valuation "not really upon *evidence* on this subject, but upon the erroneous contract price derived from the bid: i. e., by dividing the bid in gross by the number of shots which proved to be necessary under the plans and specifications, $3.27, and Sehrt's [a defendant executive] 'settlement offer' of $3.65." If this were the only record evidence, we would be inclined to agree with plaintiff because it contended at the trial level that it underestimated the number of inspections required by the original contract, and a fair price therefor was $5.40 per shot. But the trial court's finding does not rest solely on the original contract price, as there is other substantial evidence justifying the court's finding of reasonable value. At trial, Mr. Trowbridge, the owner and director of plaintiff, was cross-examined in detail as to the cost of the radiographic inspection work. This testimony included the cost of labor and materials, the

number of shots each man could likely perform per day, the cost of developing the film, etc. In its brief, defendant computes a unit cost per inspection for labor and materials of $2.85 based on Trowbridge's testimony. Adding 20% to this cost figure for overhead and profit would result in only $3.43 per inspection, whereas the court allowed $3.50. There are some variances in the estimated labor and material costs in Mr. Trowbridge's testimony, and by assuming the highest estimate, one could compute a figure much in excess of the $2.85 cost. But this is not the function of a reviewing court. As stated by the late Judge Sanborn in Cleo Syrup Corp. v. Coca-Cola Co., 139 F.2d 416 (8th Cir. 1943), cert. denied, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074 (1943):

> "This Court, upon review, will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. (Citations omitted.) The power of a trial court to decide doubtful issues of fact is not limited to deciding them correctly. (Citations omitted.) In a nonjury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. (Citations omitted.) The District Court, in making its findings, was under no misapprehension as to the applicable law. (Citations omitted.) In determining whether there is a sufficient evidentiary basis for the court's findings of fact, we must take that view of the evidence and the inferences deducible therefrom which is most favorable to the plaintiff." 139 F.2d at 417–418.

■ The evidence set out above was sufficient to support the trial court's finding that $3.50 per inspection was a reasonable quantum meruit award under the circumstances. Undoubtedly taken into consideration were the actual cost, the volume of the work, the fact that plaintiff was already engaged in the work and no additional expense would accrue for setting up facilities to perform the work. It does not matter that plaintiff's evidence, if credited, would have justified a finding of a higher amount, nor does it matter what our conclusion would have been had we been sitting at the trial level. A trial judge sitting without a jury is in the best position to make a proper determination as he has the feel of the case, and the opportunity to observe the witnesses and make credibility findings. This a reviewing court cannot as accurately do with only the cold record before it. We conclude that the record evidence warranted the trial court's finding as to reasonable value.

■ We find no merit in the following subsidiary issue. Plaintiff contends that defendant admitted at trial and in post-trial proceedings that $5.40 per inspection was a fair and reasonable price. These "admissions" were made on defendant's theory at trial that it was liable only for the 954 reexaminations occasioned by its defective work. Defendant never admitted that $5.40 per inspection was a reasonable amount for the 3341 radiographic inspections the trial court held it liable for. Plaintiff relies on Cox v. Esso Shipping Co., 247 F.2d 629, 632 (5th Cir. 1957), but this case is inapposite as it merely defines an admission as a position taken by an adversary "which is contrary to and inconsistent with the contentions now made in litigation." Defendant here has not taken any inconsistent position. In rejecting the plaintiff's various contentions, we are convinced that the so-called admissions of valuation were based on defendant's theory of the case. More analogous than Cox, supra, is the Missouri case of Brown v. Alton R. Co., 236 Mo.App. 26, 151 S.W.2d 727, 738 (1941), wherein the court stated:

> "Plaintiff makes a calculation different from that contained in defendants' brief, based on the theory that the train was going at the rate of 35 miles per hour and states: Plaintiff 'accepts 35 miles per hour as the rate

of speed of the train.' Defendants say that plaintiff admits, in her brief, that the train was going 35 miles per hour. Of course, if a party makes an unequivocal admission in this court as to the state of the record we could, no doubt, accept it as a judicial admission, and conclusive, regardless as to what the record actually showed. However, in another brief filed by plaintiff, after the filing of her original brief, she makes it clear that she does not intend to make any such admission. We do not think that plaintiff has been concluded in this matter by anything said in the briefs."

It is clear that defendant did not make a binding judicial admission as to value of the entire shots the District Court held it liable for or there would have been no litigation in the first place.

We conclude that the evidence provided the trial court with a sound basis for finding the quantum meruit value of the inspections as it did.

The judgment is affirmed.