418 F.2d 995
 Melody C. CHRISTENSEN, Appellee,
v.
GREAT PLAINS GAS COMPANY, a Division of National Propane
Corporation, Appellant, Elcona Homes Corporation,
and Valley Homes and Furniture, Inc.
 No. 19613.
 United States Court of Appeals Eighth Circuit.
 Dec. 2, 1969.
 
 Raymond R. Stefani of Silliman, Gray & Stapleton, Cedar Rapids, Iowa, for appellant.
 Robert F. Wilson and Robert W. Matias, Cedar Rapids, Iowa, for appellee.
 Before MEHAFFY, GIBSON and HEANEY, Circuit Judges.
 MEHAFFY, Circuit Judge.
 
 
 1
 Melody C. Christensen,[1] plaintiff-appellee, suffered a total loss to her new mobile home and its contents as a result of a fire. She brought this action against Great Plains Gas Company, Elcona Homes Corporation and Valley Homes and Furniture, Inc., alleging that various acts of negligence in the installation, connection and testing of a gas stove and system in her mobile home resulted in a gas leakage which caused the fire. Jurisdiction was not obtained upon Valley Homes and Furniture, Inc.
 
 
 2
 The case was tried to the district court sitting without a jury. The court found that plaintiff had failed to prove any negligence on the part of Elcona; that Great Plains had attached two of its liquid petroleum gas tanks to the mobile home in a negligent manner; that said negligence was the proximate cause of the fire; and entered judgment against Great Plains for the resulting loss. We affirm.
 
 
 3
 The issues here involve evidentiary questions and assignment of error based on the contents of the district court's findings of fact, it being argued that the findings respecting negligence are too general and that defendant's motion for additional findings should have been granted.
 
 
 4
 Briefly recited, the facts are that plaintiff purchased a new mobile home which was delivered to her at the trailer court by Elcona on August 12, 1965. It was placed on concrete blocks at the location previously occupied by plaintiff's old trailer. Upon the evening of its delivery and the following morning, plaintiff and her friends moved her household furnishings, clothing and personal effects into the new mobile home.
 
 
 5
 Plaintiff called Great Plains and advised of the arrival of the new trailer and requested that the company connect the LP gas to the gas stove and make it operable. Shortly after noon on the following day a Great Plains employee, Richard Koering, connected the two LP gas tanks which had been earlier disconnected from plaintiff's old mobile home. Plaintiff was not present at the time Koering arrived and commenced his work, but a friend of hers was present. Plaintiff arrived just as Koering was putting his tools in his truck preparatory to departing. Koering advised plaintiff that he completely checked the system and that the stove was working perfectly.
 
 
 6
 The gas stove in the trailer was equipped with copper tubing which ran to the outside of the trailer to which the LP gas tanks were attached. Koering was a bulk truck driver, and while he rarely went into houses he had considerable experience in this type work. In connecting the tanks to the trailer he put the two pieces of tubing together with a connector and when he had completed the outside work went inside the trailer and lighted the pilot lights and turned on the burners of the stove. He checked only the connections with Sherlock Leak Detector. This is a substance similar to soapsuds that will bubble at the point where a leak exists. He was familiar with a manometer, which is used to check for gas leaks in a system, but did not use one because he did not think it necessary, although one would have been available to him from his company for such use had he desired it.[2] Utilization of a manometer would have revealed whether there was a leak anywhere in the system, whereas testing merely the connection points with the leak detector would not disclose a leak any place other than where the fluid was applied. Koering did not check the oven pilot light and relied on his assumption that the automatic shutoff was working and reasoned that to light the oven would heat the trailer as it was an extremely hot day. As Koering was leaving, he moved the gas tanks he had connected behind the trailer a distance of approximately two feet and made no further check of the system after moving the tanks. The copper tubing was flexible and Koering did not think the act of moving the tanks would have any effect on the system.
 
 
 7
 Plaintiff detected a slight odor of gas by the stove as she was in that area washing her dishes, but did not attach any significance to this as her experience with other trailers was that when she ran out of gas and a new tank was connected, you could smell the same odor around the stove. Thereafter she left for work. That night a fire was detected by occupants of a nearby trailer and someone telephoned plaintiff's place of work, but by the time she arrived at her home firemen were already there and the loss was total.
 
 
 8
 Defendant first argues that the district court erred in its finding of fact that Great Plains connected two of its LP tanks to the mobile home in a negligent manner and that this negligence was the proximate cause of the fire as it is asserted that the evidence showed that a proper hookup of the gas supply line was made; that an LP gas leak was not proven; that the source of origin of ignition for such fuel was not proven; and that LP gas was not a contributing factor to the cause of the origin of the fire. We find no merit to this argument because Koering, the Great Plains employee, admitted that his job embraced the connection of the gas tanks as well as the testing of the system. Although Koering testified that he did not check the oven at all, he admitted telling plaintiff that he had checked out the stove and that it was working perfectly.
 
 
 9
 Captain Kenneth L. Anderson of the Fire Prevention Bureau of the Cedar Rapids Fire Department, an employee of that Department for over eighteen years and with special schooling and training in the field, was called early on the morning following the fire and made an investigation. Based on what he saw and learned from the neighbors and witnesses, he gave as his expert opinion that the fire was started by an LP gas leak 'ignited by the pilot light on the oven.' The physical facts showed that the intense fire was at the floor line, and since LP gas is heavier than air this indicated that the fire burned downward toward the floor, whereas in a normal burning you would find heat travelled upward, and the heavier burning would be at the higher point. This indicated an LP gas fire although there was contrary opinion evidence. Captain Anderson assumed the ignition point was the oven pilot and again the evidence was in conflict as to whether the oven pilot was burning.
 
 
 10
 Great Plains also argues that the evidence was insufficient because there was no direct evidence of leakage of LP gas and that there was no explosion or loud type sound preceding or at the time of the fire. Whether LP gas will explode depends upon the surrounding conditions, including the presence of oxygen. If enough oxygen is present, it will burn. It stands undisputed that it was a hot day and all of the windows of the trailer were open, so one would not normally expect an explosion under these conditions.
 
 
 11
 It is also argued that the district court erred in not finding plaintiff guilty of contributory negligence as a matter of law because she was in sole possession and control of the stove and smelled the gas but took no steps to notify Great Plains thereof. We cannot say as a matter of law that plaintiff was guilty of negligence under the circumstances existing here based on her admission that she detected a faint odor of gas near the stove when she returned to the trailer. Koering had completed his work with the exception of moving the tanks on his way to his truck, and had advised her that the stove was in perfect condition. She had a right to rely on his statement and had no cause to be alarmed because she detected a faint odor of gas as she had done previously when tanks had been connected.
 
 
 12
 In determining the sufficiency of the evidence in cases of this kind, we must take that view of the evidence and the inferences deducible therefrom which is most favorable to the plaintiff. We have no right to set aside a finding of fact of the trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. St. Louis Testing Laboratories, Inc. v. Mississippi Valley Structural Steel Co., 375 F.2d 565, 567 (8th Cir. 1967).[3]
 
 
 13
 Happening as it did, there were no eyewitnesses as to the origin of the fire, but there is ample evidence to support the trial court's finding of negligence in connecting the tanks since this operation admittedly involved the testing and checking of the gas stove and attachments. This work was performed by a Great Plains employee without the use of a manometer, or similar device, and without checking the oven or its pilot light when this could well have been the source of the leakage. The testimony of Captain Anderson indicates this, and it is for the trial court to credit or discredit the testimony and to determine the existence, if any, of negligence. It is our duty to abide the trial court's conclusion where substantial evidence supports it.
 
 
 14
 We are convinced that there is substantial evidence supporting the court's finding of negligence on the part of Great Plains.
 
 
 15
 In addition to the evidentiary issues hereinabove discussed, Great Plains argues that the district court erred in making only a general finding of negligence and in denying its motion requesting additional findings. The pertinent findings and conclusions of the court are set out in a footnote and are not as specific or detailed as we would desire; yet we think they suffice in the instant case to indicate to us the basis for the trial court's decision.[4] In Kelley v. Everglades Drainage Dist., 319 U.S. 415, 419, 63 S.Ct. 1141, 1143, 87 L.Ed. 1485 (1943), the Supreme Court said: 'The nature and degree of exactness of the findings required depends on the circumstances of the particular case.' One of the salient purposes for the requirement of Rule 52 that the 'court shall find the facts specially and state separately its conclusions of law thereon' is to aid the court when an appeal is taken. See 5 Moore, Federal Practice P52.05(1) and P52.06(1) (2d ed. 1969).
 
 
 16
 In the instant case the court's findings stand alone as the district court did not file a memorandum. In certain cases under different factual situations the court's bare finding that 'Great Plains attached and connected two of its liquid petroleum gas tanks to said mobile home in a negligent manner' and the 'negligence of defendant Great Plains was the proximate cause of the fire and plaintiff's loss' would not suffice to afford this court with a basis for the district court's decision. However, in the instant case, it is perfectly obvious that, when considered in context with Great Plains' employee's definition of his function in attaching and connecting the two gas tanks to the trailer as encompassing a complete check of the entire system which included the gas stove and tubing, the court also used the language to imply the same overall function of this employee. This also embraces what plaintiff considered to be the function of Great Plains' employee. Thus, particularly when consideration is given to the court's finding in its conclusions of law of the Iowa Departmental Rules, Public Safety Department at 554 (1966), there is little doubt of the basis for the court's ultimate conclusion.
 
 
 17
 In Skelly Oil Co. v. Holloway, 171 F.2d 670, 673 (8th Cir. 1948), this court in discussing Rule 52(a) said:
 
 
 18
 'The rule is intended to aid the appellate court by giving a clear understanding of the basis of the trial court's decision. The trial court is not required to make findings on all the facts. It need only find such ultimate facts as are necessary to reach decision in the case. (Citing cases.) In Kelley et al. v. Everglades Drainage District, 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 525, it is said that 'there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion."
 
 
 19
 In the later case of Manning v. Jones, 349 F.2d 992, 996 (8th Cir. 1965), this court said:
 
 
 20
 'More specifically, a district court's findings of fact must be liberally construed and found to be in consonance with the judgment if the judgment has support in the record evidence. (Citing cases.) This is so even if the findings are not as specific or detailed as might be desired. (Citing cases.)'
 
 
 21
 Manning was quoted from and cited with approval in Freeman v. Gould Special School Dist., 405 F.2d 1153, 1156 (8th Cir. 1969), cert. denied, 90 S.Ct. 61 (U.S. Oct. 14, 1969).
 
 
 22
 The courts are in accord in holding that findings of fact should be with such specificity as to afford a reviewing court a clear understanding of the ground for the trial court's decision. S. S. Silberblatt, Inc. v. United States, 353 F.2d 545 (5th Cir. 1965); Feeley v. United States, 337 F.2d 924, 12 A.L.R.3d 1228 (3rd Cir. 1964); Lundgren v. Freeman, 307 F.2d 104 (9th Cir. 1962); State of Utah v. United States, 304 F.2d 23 (10th Cir. 1962), cert. denied, 371 U.S. 826, 83 S.Ct. 47, 9 L.Ed.2d 65 (1962).[5]
 
 
 23
 Particularized findings are not always necessary when from the findings an appeal court can have a clear understanding of the basis of the trial court's decision. We are convinced here that the court by using the language that Great Plains' employee attached its tanks to plaintiff's trailer home in a negligent manner implies by reason of the Iowa Public Safety Rule in its conclusion of law and the evidence heretofore pointed out that the basis of the court's decision was that Great Plains' employee was negligent in his failure to properly check the gas system, and that this negligence on Great Plains' part was the proximate cause of the fire. It is always preferable that the findings be more specific, at least to such an extent as to make sure that they afford a reviewing court a clear understanding of the ground for the trial court's decision. Great Plains in its motion for additional findings urged the trial court to set forth the particular direct evidence on certain points, but in this case this was unnecessary and in fact would not have been good practice. If we remanded on this issue, we could only require that the judgment be vacated and more particularized findings be made.
 
 
 24
 For the reasons hereinabove stated, the judgment of the district court is affirmed.
 
 
 
 [1]
 At trial date Mrs. Christensen was married to a Mr. McCoy
 
 
 [2]
 Great Plains employee Koering, who made the installation, apparently was unfamiliar with the Iowa Departmental Rules requiring use of a manometer or equivalent device. This witness testified as follows:
 'Q. Are you aware of the Iowa Departmental rules concerning the installation of liquified petroleum gas, specifically the one at 82, subsection D, which states, 'After installation the piping and tubing of all domestic and commercial systems shall be tested of not less than operating normal pressure and proved free of leaks using a manometer or other equivalent device that will indicate a drop of pressure. Tests shall not be used with flame.' A. I never used a flame. 'Q. You didn't know about that? You did or did not know about it? A. I did not.'
 The trial court was requested to take judicial notice of the Iowa Departmental Rules of the Department of Public Safety, and it is noted that the district court referred to said rules in its conclusions of law.
 
 
 [3]
 In St. Louis Testing Laboratories, Inc. v. Mississippi Valley Structural Steel Co., 375 F.2d 565, 567 (8th Cir. 1967), we set out the often-quoted extract from the opinion of the late Judge Sanborn in Cleo Syrup Corp. v. Coca-Cola Co., 139 F.2d 416, 150 A.L.R. 1056 (8th Cir. 1943), cert. denied, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074 (1943):
 "This Court, upon review, will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. The power of a trial court to decide doubtful issues of fact is not limited to deciding them correctly. In a nonjury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. The District Court, in making its findings, was under no misapprehension as to the applicable law. In determining whether there is a sufficient evidentiary basis for the court's findings of fact, we must take that view of the evidence and the inferences deducible therefrom which is most favorable to the plaintiff.' 139 F.2d at 417-418.'
 
 
 [4]
 The pertinent findings of fact are:
 '6. During the early afternoon of August 13, 1965, Great Plains attached and connected two of its liquid petroleum gas tanks to said mobile home in a negligent manner. '7. On August 13, 1965, at about 11:25 p.m., said mobile home having a fair market value of $5,100.00 and its contents having a fair value of $8,900.00 were totally destroyed by fire. '8. The negligence of defendant Great Plains was the proximate cause of the fire and plaintiff's loss. '9. Plaintiff has failed to prove by a preponderance of the evidence that defendant Elcona was negligent. '10. Defendants have failed to prove by a preponderance of the evidence that plaintiff was contributorily negligent.'
 The following constitute the conclusions of law:
 '1. This court has jurisdiction of the parties and subject matter, 28 U.S.C., 1332. '2. Great Plains is liable to plaintiff in the sum of $14,000.00. Skelly Oil Co. v. Holloway, 171 F.2d 670 (8th Cir. 1948); McMahon v. City of Dubuque, 107 Iowa 62, 77 N.W. 517 (1898); 22 Am.Jur.2d, Damages 150 at 218-19; 25 C.J.S. Damages 88 at pp. 970-71; 17 A.L.R.2d 889. See also Britven v. Occidental Ins. Co., 234 Iowa 682, 684, 13 N.W.2d 791, 793 (1944); Iowa Departmental Rules, Public Safety Department at 554 (1966).'
 
 
 [5]
 See n. 12 in S. S. Silberblatt, Inc. v. United States, 353 F.2d 545, 550 (5th Cir. 1965)