Robert W. **JACKSON**, Appellant,

v.

**HARTFORD ACCIDENT AND INDEM-NITY COMPANY, Marvin Rice, Virgil Erickson and John Fetzer, Appellees.**

**No. 19671.**

United States Court of Appeals, Eighth Circuit.

March 10, 1970.

---

Elwyn L. Cady, Jr., Independence, Mo., for appellant.

Paul Scott Kelly, Jr., of Tucker, Murphy, Wilson, Lane & Kelly, Kansas City, Mo., for appellees, Marvin Rice and Hartford Accident and Indemnity Co.

Robert A. Schroeder and Theodore J. Furry, Kansas City, Mo., for appellee John Fetzer.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

This appeal is from a judgment adverse to plaintiff-appellant in an action for damages for alleged deprivation of plaintiff's rights under the Civil Rights Act, 42 U.S.C. § 1983.[1] Defendants-appellees are Marvin Rice, sheriff of Chariton County, Missouri; Virgil Erickson, his deputy; Hartford Accident and Indemnity Company, surety on the officers' bonds; and Dr. John Fetzer, an osteopathic physician who as county physician treated plaintiff during his incarceration.

The basis of plaintiff's claims as set forth in his amended complaint is that defendants failed to "furnish non-negligent professional medical and surgical attention to plaintiff as was required to fulfill the duty imposed by law." It is contended that defendants' failure to fulfill this duty amounted to cruel and unusual punishment in violation of the Eighth Amendment and constituted a lack of due process under the Fourteenth Amendment to the Constitution of the United States.

This case was tried before Chief Judge Becker of the United States District Court for the Western District of Missouri sitting without a jury. Judge Becker held in an unreported but elaborate opinion constituting his findings of fact and conclusions of law that there was no evidence of negligence, and judgment was accordingly entered for defendants. We affirm the judgment of the district court.

Briefly recited, the evidence reflects that on Saturday night, September 11, 1965, plaintiff, who had been drinking for several hours and was drunk, was arrested by a deputy sheriff on a charge

---

1. 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

of disturbing the peace. The deputy sheriff attempted to place plaintiff in a patrol car but on several tries plaintiff struggled out of control and it finally became necessary for the deputy sheriff to hit plaintiff on the head with his night stick in order to handcuff him and take him to the county jail. After being driven to the jail, plaintiff was able to walk in unassisted. He slept most of the next day, which was Sunday. It is conceded that the arrest was lawful and no claim was made other than failure to furnish proper and non-negligent medical care. On Monday, September 13, 1965, plaintiff was taken before the magistrate's court and after pleading guilty to the charge of disturbing the peace, he was sentenced to sixty days in jail.

It was not until the following Tuesday, September 14, 1965, that plaintiff asked to see a doctor. The sheriff promptly called Dr. Fetzer, the county physician, who examined plaintiff on this date. Plaintiff complained at that time that he was nervous, could not sleep nor eat and felt shaky. Dr Fetzer examined him and diagnosed his condition as withdrawal from excessive use of alcohol and prescribed aspirin. Dr. Fetzer found plaintiff's temperature to be normal, his heart beat fast and blood pressure normal. Two days later Dr. Fetzer again examined plaintiff and in his opinion plaintiff had recovered from his drunkenness and would be all right within a few days.

A doctor was at the jail one or two days a week during plaintiff's incarceration but he did not again ask to see a doctor or ask to be examined until October 4, 1965. On this date Dr. Fetzer was unavailable but Dr. George Quinn was called. He examined plaintiff and observed that he had a broken and abscessed tooth which caused swelling of his left cheek. Dr. Quinn prescribed an antibiotic for treatment of the infected tooth. Dr. Fetzer next visited plaintiff on October 11 and observed the swelling and the abscessed tooth, but saw no evidence of a fracture. He lanced the swelling and administered antibiotics and penicillin. On October 14, Dr. Fetzer again examined plaintiff and found the tooth still infected but an examination on October 25 revealed that the infection had cleared up. On this date, however, plaintiff still complained of pain and Dr. Fetzer recommended that the jaw be x-rayed. He made arrangements for plaintiff to be released from jail some eleven or twelve days prior to the expiration of his sentence for the purpose of going to the University of Missouri Medical Center for x-rays inasmuch as there were no x-ray facilities in Chariton County. The x-ray at the Medical Center revealed that plaintiff had a fractured jaw which required wiring in order to allow it to heal properly, but did not require repositioning. Since there were no facilities at the Medical Center for wiring the jaw, plaintiff was sent to the General Hospital in Kansas City where the wiring operation was performed and the abscessed tooth extracted. If the fracture had been discovered earlier, the proper procedure would nonetheless have been to clear up the infection before wiring the jaw.

Judge Becker found from the evidence that plaintiff was seen a total of fifteen to twenty times by three doctors, including Dr. Fetzer, Dr. Quinn and one Dr. Pressly, while incarcerated for some forty-eight days in the Chariton County jail. Dr. Scott, who testified for plaintiff at the trial, stated that plaintiff's jaw position was satisfactory. Judge Becker found that under the uncontradicted evidence "defendants Rice and Erickson provided apparently competent practitioners to attend plaintiff each and every time he requested medical service and that there was no other instance of apparent need in which Sheriff Rice or his deputy Erickson refused or neglected to provide an apparently competent practitioner." The court further found that "Dr. Fetzer appropriately diagnosed and treated the infected tooth, and not untimely, in view of the circumstances, suspected plaintiff's jaw to be broken, whereupon he took steps to

effect plaintiff's immediate and early release for the purpose of having an x-ray taken."

It was plaintiff's testimony that he demanded to see a doctor and have his jaw x-rayed as early as the first Monday he was in jail although this conflicted with his deposition and was against the overwhelming countervailing evidence. In sum, Judge Becker held that under the evidence Dr. Fetzer could not reasonably be found to have accorded plaintiff negligent treatment, much less to have subjected him to cruel and unusual punishment violative of the Eighth and Fourteenth Amendments.

 We think that Judge Becker's findings under the evidence in this case on its factual aspects are dispositive of the controversy. In cases tried to the court without a jury, we have no right to set aside a finding of the trial court if there is any substantial evidence to sustain it except for the reasons contained in the well-settled rule that we stated in Christensen v. Great Plains Gas. Co., 418 F.2d 995, 998 (8th Cir. 1969), in the following language:

> "We have no right to set aside a finding of fact of the trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. St. Louis Testing Laboratories, Inc. v. Mississippi Valley Structural Steel Co., 375 F.2d 565, 567 (8th Cir. 1967)."

Plaintiff contends that certain admissions of Sheriff Rice and Dr. Fetzer constituted judicial admissions establishing that his federal rights under § 1983 were violated. We have considered this contention and find it has no merit.

 Plaintiff also contends that the court erred in not considering and relying on the expert testimony of Dr. Scott. Aside from the fact that this doctor had limited private practice experience, he was asked to answer a hypothetical question which was obviously incomplete for failure to include some necessary facts and improper for other reasons not necessary to relate. Further, his answer was contradicited by all the other doctors. It is the trial court's function, not ours, to assess the weight to be given such testimony even though it be from an expert. We said in Parke-Davis & Co. v. Stromsodt, 411 F.2d 1390, 1395 (8th Cir. 1969), that " * * * the resolution of conflicting testimony, including that of expert witnesses, is for the trier of fact. (Citing cases.)"

Since the evidence clearly supports Judge Becker's holding that defendants were guilty of no negligence whatsoever, we do not need to reach the question of application of the federal act. Assuming that it is applicable, there is no evidence justifying a finding that there was any negligence on the part of defendants or any possibility of a violation of the plaintiff's rights under the Eighth and Fourteenth Amendments to the Constitution of the United States.

The judgment is affirmed.

LAY, Circuit Judge (concurring):

I concur in the court's opinion. Upon review of the entire evidence one cannot reasonably state with "definite and firm conviction that a mistake has been committed." United States v. U. S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

I dislike entering into a mired, well-worn path of semantic debate. However, the common law lives only by the words judges write, so significantly, the preciseness of judicial definitions often serves as the pivotal factor for future cases. The language that this court has traditionally utilized in defining the standard of "clearly erroneous," as applied to a trial judge's findings, is not only troublesome to me, but seemly patent error.

In December 1943, this court decided the often cited case of Cleo Syrup Corp. v. Coca-Cola Co., 139 F.2d 416, 150 A.L. R. 1056 (8 Cir. 1943). Judge Sanborn stated these principles:

> "This court, upon review, will not retry issues of fact or substitute its

judgment with respect to such issues for that of the trial court. \* \* \* In a non-jury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law." 139 F.2d at 417–418.

This language was drawn from his earlier opinion Aetna Life Ins. Co. v. Kepler, 116 F.2d 1, 5 (8 Cir. 1941). Judge Sanborn there pointed out the old distinction between equity rules and law rules as to review of the trial court's findings of fact. He said:

"Prior to the effective date (September 16, 1938) of the Rules of Civil Procedure, the findings of fact of a trial court, in an action at law tried without a jury, were as conclusive, upon review, as a verdict of a jury, and could not be set aside by the reviewing court if there was any substantial evidence to support them. A different rule prevailed in equity cases. The findings of fact of the trial court in such cases were presumptively correct, and, unless clearly against the weight of the evidence or induced by an erroneous view of the law, would not be disturbed by a reviewing court."

He then pointed out the effect of the then new Rule 52(a)

" \* \* \* was to establish a uniform standard for testing the validity of findings of fact in any case tried without a jury. The standard adopted was· that which had always prevailed in equity.

"This Court, with respect to jury-waived cases, is no longer merely a court of error which considers only questions of law. It now acts as a court of review in all non-jury cases in accordance with the practice which formerly prevailed in equity appeals."

The opinion quotes from the Chairman of the Advisory Committee (Honorable William Mitchell) regarding the adoption of Rule 52(a). The Chairman pointed out that under 52(a), a trial judge's findings in both types of actions (equity as well as law) "can be set aside if against the clear weight of evidence, even though there is some evidence that might support a verdict or findings in a law case under the old system." 116 F. 2d at 5, n. 3.

However, in concluding his discussion, Judge Sanborn said: "The findings of fact of the court below to the extent that they are unsupported by substantial evidence \* \* \* are not binding upon this Court." 116 F.2d at 5.

The danger lurking behind this statement is, as this court has done many times in the past, in restating the converse of the above rule to the effect that "we have no right to set aside a finding of the trial court if there is any substantial evidence to sustain it. \* \* \*" This simply reinstates the rule supposedly discarded by the adoption of Rule 52(a). See United States v. U. S. Gypsum Co., 333 U.S. at 395, 68 S.Ct. 525.

Text writers have consistently been critical of the courts for equating "substantial evidence" with the "clearly erroneous" rule. An example of this is stated in 2B Barron-Holtzoff, Federal Practice & Procedure, § 1135 at p. 549 (Rev. Rules ed. 1961):

"There is occasionally a suggestion that a finding which is supported by substantial evidence cannot be clearly erroneous. This is not the law. If the findings of the trial court appear to be against the clear weight of the evidence, after giving full effect to the special qualification of the trial judge to estimate the credibility and value of oral testimony, the appellate court may set aside the findings, and will do so even where there is evidence which, if credible, would be substantial, if the effect of the testimony considered as a whole convinces the appellate court that the finding is so against the great preponderance of credible testimony that it does not reflect the truth and right of the case."

Professor Davis points out:

"The scope of review of findings of a judge without a jury, however, is different from the scope of review of administrative findings and of jury verdicts, for findings of a judge may be upset if they are 'clearly erroneous.' Because findings may be clearly erroneous without being unreasonable so as to be upset under the substantial-evidence rule, the scope of review of administrative findings is narrower than the scope of review of a judge's findings." Davis, Admin. Law § 29.02 at p. 121.

The Davis treatise also points up the overall legislative history of the Administrative Procedure Act, 5 U.S.C.A. § 551 et seq. (hereinafter APA). Its sponsors rejected the "clearly erroneous" test and adopted the "substantial evidence" rule in its place. Professor Davis, in quoting from a law review commentator, sets forth:

"'Application of the "clearly erroneous" rule to administrative agencies was favored and opposed precisely because it would give administrative findings less finality than they enjoyed under the "substantial evidence" rule.'" § 29.02 at p. 123.

The history of the APA is similarly detailed by Mr. Justice Frankfurter in Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Perhaps, as some have intimated, the distinction between review of findings of fact based upon "substantial evidence" and review based upon the "clearly erroneous" rule is too marginal to make a difference.[1] Justice Frankfurter, however, did not assume as much when he earlier observed:

"The ultimate reliance for the fair operation of any standard is a judiciary of high competence and character and the constant play of an informed professional critique upon its work.

\* \* \* \* \* \*

"But a standard leaving an unavoidable margin for individual judgment does not leave the judicial judgment at large even though the phrasing of the standard does not wholly fence it in. The legislative history of these Acts demonstrates a purpose to impose on courts a responsibility which has not always been recognized." 340 U.S. at 489, 71 S.Ct. at 465.

It is submitted that courts of review would add more light to the standard of "clearly erroneous" by avoiding use of the term of "substantial evidence."

One of the major areas of confusion arises in distinguishing between "substantial evidence" and "substantial evidence on the record as a whole." For example, where substantial evidence on the record as a whole exists, an administrative board's finding is conclusive on a reviewing court. Yet, it is clear that this standard is not applicable under the "clearly erroneous test."[2]

1. See NLRB v. Southland Mfg. Co., 201 F.2d 244, 250 (4 Cir. 1952) (per J. Soper).

2. Cf. Montana-Dakota Utilities Co. v. Federal Power Comm'n, 169 F.2d 392, 398 (8 Cir. 1948): "The findings of an administrative agency are not to be tested by Rule 52(a) of the Rules of Civil Procedure." See also the statement in Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951):
"To be sure, the requirement for canvassing 'the whole record' in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. Congress has merely made it clear that a reviewing court is not barred from setting

**1278**

The Fifth Circuit points up another area of confusion:

"The clearly erroneous concept * * * affords a greater latitude [of review] than would an appeal from a jury verdict. *In the latter it is a question of substantial evidence.* In the former, there is still the qualitative factor of the truth and right of the case—the impression that a fundamentally wrong result has been reached." (Emphasis ours.) Oil Screw Noah's Ark v. Bentley & Felton Corp., 322 F.2d 3, 5–6 (5 Cir. 1963).

See also United States v. U. S. Gypsum Co., 333 U.S. at 395, 68 S.Ct. 525, 92 L. Ed. 746.

In the final analysis, the language from the *Gypsum* case gives us a definite guideline as to the meaning of "clearly erroneous," and formulas attempting to rephrase it are more confusing than helpful.[3] The ultimate test of any appellate standard of review is what finality and integrity be given to findings being reviewed. The rules emphasize that traditional weight be given to a trial court's determination of credibility of the witnesses. Nevertheless, Rule 52(a) when viewed in light of its legislative history and by Supreme Court decisions, demonstrates that an appellate court may substitute its judgment for the trial court's findings notwithstanding substantial evidence to support it, when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." The occasion to so hold seldom arises, but I deem it important not only here, but in all proceedings, to hold firm to Judge Frank's observation: "It

aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

**3.** In *Universal Camera* Mr. Justice Frankfurter similarly spoke of the definitions as to the "substantial evidence" rule:

follows that evidence sufficient to support a jury verdict or an administrative finding may not suffice to support a trial judge's finding." Orvis v. Higgins, 180 F.2d 537, 540 (2 Cir. 1950).

"Since the precise way in which courts interfere with agency findings cannot be imprisoned within any form of words, new formulas attempting to rephrase the old are not likely to be more helpful than the old. There are no talismanic words that can avoid the process of judgment." 340 U.S. at 489, 71 S.Ct. at 465.